**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| D.G., | : | **Civil Action No. 25-00740** |
|  | : |  |
| Plaintiff, | : |  |
|  | : | **OPINION** |
| v. | : |  |
|  | : |  |
| COMMISSIONER OF | : |  |
| SOCIAL SECURITY, | : |  |
| Defendant. | : |  |
|  | : |  |
|  | : |  |

**CHESLER, District Judge**

This matter comes before the Court on the appeal by Plaintiff D.G. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. Civ. R. 78.1(b), finds that the Commissioner's decision will be affirmed.

In brief, this appeal arises from Plaintiff's application for disability insurance benefits, alleging disability beginning February 14, 2020. A hearing was held before ALJ Karen Shelton (the "ALJ") on August 13, 2024 and the ALJ issued an unfavorable decision on November 27, 2024. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal. Of note, Plaintiff was found disabled as of June 13, 2023 in a subsequent application for disability benefits, so the ALJ's

1

decision at issue here only dealt with the period of February 14, 2020 through June 12, 2023.

In decision of November 27, 2024, the ALJ found, at step two, that Plaintiff had several severe impairments, including thoracic radiculitis status post thoracic laminectomy, major depressive disorder, generalized anxiety disorder, and panic disorder. At step three, the ALJ found that Plaintiff's condition did not meet the requirements of any of the Listings of Impairments. At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work with specific exertional and non-exertional limitations, and that Plaintiff had no past relevant work. Finally, at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

On appeal, Plaintiff argues that the Commissioner's decision should be reversed, and the case remanded, based on two broad arguments. First, Plaintiff contends that the ALJ's RFC determination was not supported by substantial evidence because the ALJ erred in her evaluation of the opinions of Dr. Huch, NP O'Scanlon, and PT Ward. Second, Plaintiff argues that the ALJ failed to perform an evaluation of Plaintiff's subjective complaints.

In reviewing the ALJ's determination, this Court must affirm the Commissioner's final decision if it is "supported by substantial evidence." 42 U.S.C. § 405(g). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011). Further, on appeal, Plaintiff carries twin burdens of proof. First, Plaintiff bears the burden at the first four steps of the analysis of demonstrating how her impairments, whether individually or in combination, amount to a qualifying disability. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). Second, Plaintiff bears the burden of showing not merely that the Commissioner erred, but also that the error was harmful. Shinseki v. Sanders, 556 U.S. 396, 409 (2009). At the first four steps, this requires that Plaintiff

2

show that, but for the error, she might have proven her disability.  In other words, when appealing a decision at the first four steps, if Plaintiff cannot articulate the basis for a decision in her favor, based on the existing record, she is quite unlikely to show that an error was harmful.

Plaintiff argues first that the ALJ committed legal error because she failed to incorporate limitations from Nurse Practitioner O'Scanlon's ("O'Scanlon") assessment, which the ALJ stated was "partially persuasive," into her final RFC determination.  (Mot. at 17).  The ALJ ultimately found that Plaintiff had the RFC to perform light work with the following additional limitations:

> She could lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently, sit for six hours in an eight-hour workday, and stand and/or walk for six hours in an eight hour workday. The claimant could frequently balance and climb ramps and stairs; occasionally stoop, kneel, and crouch; and never crawl nor climb ladders, ropes, or scaffolds. She could not be exposed to unprotected heights or hazardous machinery. The claimant was able to understand, remember, and carry out simple tasks in a routine environment with few changes; work for two hours before needing a standard 15-minute break; and have occasional contact with supervisors and the public.

Plaintiff notes that, among other things, O'Scanlon assessed Plaintiff would be "moderately" limited in her ability to "maintain a schedule, regular attendance, and be punctual within customary tolerances," (Mot. at 17; Tr. at 1392), but that limitation is not reflected in the RFC determination.[1] Plaintiff believes this constituted error warranting remand because the ALJ needed to have either incorporated this specific limitation into the RFC determination or at least explained why she found this limitation persuasive but then disregarded it.  (Pl.'s Br. at 17-19).  After reviewing the record, the Court has determined that Plaintiff is correct the ALJ did not appear to fully account for the full scope of O'Scanlon's assessment in her final opinion.  But, because this error is best characterized as a minor oversight which was ultimately harmless, it does not warrant remand.

---

[1] Plaintiff marshals the same challenge with other specific limitations, but the Court uses this attendance limitation as an illustrative example.

The ALJ stated in her opinion that the moderate mental limitations assessed by O'Scanlon were persuasive.  (Tr. at 2034) ("[O'Scanlon's] opinions of up to moderate mental limitations is *supported by* her underlying treatment notes that show scant mental status findings and only periodic visits of largely every three months *and consistent with* the overall treatment record . . .") (emphasis added).  However, the ALJ appears to have ignored or at least failed to explain the impact of those limitations for the purpose of formulating and articulating her RFC determination. (Id.).  For example, as Plaintiff points out, O'Scanlon found that Plaintiff would have moderate limitations in her ability to "maintain a schedule, regular attendance, and be punctual within customary tolerances."   (Tr. at 1392).   Despite finding this persuasive, the ALJ's RFC determination contains nothing that reflects this attendance limitation, nor does the ALJ's opinion explain why this limitation was not incorporated into the RFC determination.  While an ALJ is not required to include every limitation they find credible in the ultimate RFC, they ought to at least explain why they did not include such limitation if it is omitted from the RFC determination.

Though Plaintiff is correct that the ALJ erred, she has not shown that this amounts to anything more than harmless error.  The RFC, as written, is amply supported by other substantial evidence, most notably the opinions of agency reviewers Brown and Reed, which the ALJ found fully persuasive.  (Tr. at 2033).  Both Reed and Brown found that Plaintiff could "understand, retain, and carry out simple instructions."  (Id. at 223, 232).  Additionally, like O'Scanlon, the agency reviewers assessed Plaintiff as moderately impaired in the areas of "schedule, attendance, and punctuality," and they nonetheless found her to have the capacity to "consistently and usefully perform routine tasks on a sustained basis, with minimal (normal) supervision."  (Id.).  The RFC determination here is wholly consistent with Brown and Reed's findings that Plaintiff had mild limitations in understanding, remembering or applying information and moderate limitations in

4

interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. (Id. at 2033, 219-23, 227-32). In sum, the opinions of the agency reviewers constitute substantial evidence that supports the ALJ's formulation of the non-exertional RFC, and any error by the ALJ as to O'Scanlon was harmless.

Plaintiff next challenges the physical limitations of the RFC by arguing that the ALJ failed to properly evaluate the physical opinions of Dr. Huch ("Huch") and Physical Therapist Ward ("Ward"). (Pl.'s Br. at 20-30). Plaintiff's core arguments here seem to be that the ALJ insufficiently explained why she found these providers' assessments unpersuasive and that she mischaracterized the medical evidence and Plaintiff's condition in doing so. This Court disagrees. In making the RFC determination, the ALJ must articulate her determination of the persuasiveness of a medical provider's opinion, with a focus on its supportability and consistency. See 20 C.F.R. § 404.1520(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions . . . The factors of supportability. . . and consistency. . . are the most important factors we consider."). The ALJ in this case sufficiently explained why she found both the opinions of Huch and Ward ultimately unpersuasive.

As to Huch, the ALJ found his opinion overly reliant on Plaintiff's subjective complaints and not objective medical findings, as well as inconsistent with and unsupported by evidence of record. (Tr. at 2035). The ALJ found Ward's treatment notes lacking in breadth and, like Huch's opinion, inconsistent and unsupported by evidence of record. (Id.). The ALJ shared the same rationale for finding both opinions inconsistent with the underlying record. First, the ALJ stated that Huch and Ward's opinions were at odds with contrary evidence from other physical exams, to which the ALJ provided specific citations, which "overall showed otherwise largely normal range of motion, good healing of her surgical incision, generally intact extremity strength, and

5

largely normal gait (16F, p 1; 21F, pp 3-4; B2F, p 11; B3F, pp 22 & 25; B6F, pp 14-15; B8F, pp 15 & 36; B19F; B46F, p 15; & B50F, pp 13 & 15)." (Id.). Second, the ALJ stated that these restrictive opinions were "not consistent with the claimant's longitudinal thoracic MRIs since her September 2020 laminectomy and tumor excision, which have shown no tumor recurrence, as well as resolution of fluid collection, excellent alignment, no central stenosis, and largely mild multilevel degenerative changes (B8F, p 36; B15F, p 8; B17F, p 11; B19F; & B50F, pp 6, 14, & 16-17)." (Id.). Substantively, Plaintiff takes issue with these "shared rationales" provided by the ALJ. (Pl.'s Br. at 24-31).

Plaintiff argues that the first rationale, in which the ALJ stated that both opinions were at odds with contrary evidence of record in other physical exams, is essentially conclusory and that the pin cites provided by the ALJ do not support her conclusion. This Court disagrees. To take an initial example, the Court looks to exhibit 16F, which the ALJ cites and which, among other cites, Plaintiff argues is not related to nor supportive of the ALJ's conclusion. That exhibit is a post-operative note which assesses, among other things, that "[Plaintiff]'s incision has healed well." (Tr. at 1381). This directly bolsters the ALJ's statement that evidence of record showed "good healing of [Plaintiff's] surgical incision." (Id. at 2035). It is not entirely clear why Plaintiff believes that this citation and others fail to bolster the ALJ's decision to find Huch and Ward's opinions unpersuasive. Similarly, Plaintiff takes issue with the ALJ's use of exhibit B2F, which is an examination by Dr. Rhee, in which he stated that Plaintiff had normal gait. (Id. at 1471). Again, this is directly on point to the ALJ's conclusion. For the sake of brevity, the Court will not continue this exercise for every single piece of evidence cited by the ALJ and challenged by Plaintiff, but this pattern continues.

Plaintiff also challenges the ALJ's second "shared rationale," that Huch and Ward's

opinions were not consistent with Plaintiff's "longitudinal thoracic MRIs since her September 2020 laminectomy and tumor excision, which have shown no tumor recurrence, as well as resolution of fluid collection, excellent alignment, no central stenosis, and largely mild multilevel degenerative changes." (Id. at 2035). Here, Plaintiff contends that the ALJ failed to support her finding of lack of persuasiveness because this explanation "misrepresents the nature of Plaintiff's condition." (Pl.'s Br. at 30). Plaintiff essentially argues that these findings cited by the ALJ "do not speak to the nature of the opinions, or to [Plaintiff]'s disability in general." This Court does not agree. This evidence cited by the ALJ directly bears on the ALJ's assessment of Dr. Huch's opinion as overly restrictive and counter to other evidence of record which suggests Plaintiff may be in better condition than Dr. Huch represents. Accordingly, the ALJ has sufficiently considered and assessed the opinions of Huch and Ward against the weight of the other medical evidence in concluding that those opinions are not persuasive.[2]

Finally, Plaintiff argues that the ALJ failed to perform a proper evaluation of Plaintiff's subjective complaints. (Pl.'s Br. at 31-37). In many respects, this argument recycles Plaintiff's earlier argument regarding the ALJ's "shared rationale" for finding Huch and Ward's opinions unpersuasive. The ALJ used similar language in her dismissal of those opinions as she used in her determination that Plaintiff's subjective testimony regarding the "intensity, persistence, and limiting effects of [Plaintiff's] symptoms" is "inconsistent" with the weight of the evidence. (Tr. at 2030). In this determination too, the ALJ adequately explained why the Plaintiff's testimony did not cohere with the medical evidence of record, including, for example, findings of "largely

---

[2] As a related challenge, Plaintiff argues that the ALJ erred because she stated that Ward was not an "acceptable medical source." (Pl.'s Br. at 23-24; Tr. at 2036). The ALJ, however, was correct to note that in accordance with the relevant regulations, Ward, a physical therapist, is not considered an "acceptable medical source." See 20 CFR § 404.1502 (defining acceptable medical source).

normal range of motion, good healing of her surgical incision, generally intact extremity strength, and largely normal gait." (Id. at 2031). Since the ALJ found that Plaintiff's self-reported symptoms were not consistent with objective medical evidence, she was correct to give that testimony minimal weight. See Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) ("Allegations of pain and other subjective symptoms must be supported by objective medical evidence.").

In sum, Plaintiff has failed to persuade this Court that the ALJ erred in her decision, or that Plaintiff was harmed by any errors. This Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

   s/ Stanley R Chesler
STANLEY R. CHESLER, U.S.D.J.

Dated: April 15, 2026

8